# UNITED STATES COURT OF APPEALS
## SIXTH CIRCUIT

**DR. JILL STEIN, et al.,**

Appellants-Appellants,

v.  **CASE NO. 24-3923**

**FRANK LAROSE**,
in his Official Capacity as Ohio
Secretary of State,

Defendant-Appellee.
_____

## APPELLANTS' MOTION FOR STAY, INJUNCTION PENDING APPEAL AND/OR EXPEDITED REVIEW

Mark R. Brown
*Counsel of Record*
Newton D. Baker/Baker & Hostetler Chair
CAPITAL UNIVERSITY*
303 East Broad Street
Columbus, Ohio 43215
614.236.6590
mbrown@law.capital.edu

Oliver Hall
Legal Counsel
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202.248.9294
oliverhall@competitivedemocracy.org

*Counsel for Appellants-Appellants*

*For purpose of identification only

Appellants respectfully move under Federal Rule of Appellate Procedure 8(a) for an injunction pending their appeal from the District Court's October 23, 2024 Order and Opinion, RE 19, abstaining under *R. R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), and not addressing Appellants' First and Fourteenth Amendment challenges to the Secretary's belated and illegal September 19, 2024 announcement that Ohio would not count presidential votes for Dr. Jill Stein even though she qualified for and appears on its November 5, 2024 general election ballot. The District Court also denied Appellants' request that it issue preliminary injunctive relief either with or without abstention.

Appellants certify that this is an urgent matter of ballot access for Ohio's impending general election. Appellants seek narrow, limited and reasonable relief under the extraordinary facts of this case – they ask only that the Secretary be required to count votes for a ballot-qualified candidate. Specifically, Appellants seek to stay the District Court's *Pullman* order and issue an injunction pending appeal that: (1) enjoins the Secretary from refusing to count votes for Jill Stein and her running mate Anita Rios; (2) and enjoins the Secretary and his agents from advising voters that votes cast for the Stein-Rios ticket will not be counted. *See Jones v. Coleman*, 848 F.3d 744, 754 (6th Cir. 2017) (in First Amendment cases, "when the plaintiff has requested preliminary injunctive relief, a district court ought ordinarily to grant it when it abstains [under *Pullman*].").

Alternatively, Appellants move under Federal Rule of Appellate Procedure 27 to expedite this appeal and propose the following briefing schedule:

Appellants' Brief due October 28, 2024;

Appellee's Brief due October 30, 2024;

Appellants' Reply Brief due October 31, 2024.

Appellants filed their Notice of Appeal on October, 23, 2024, *see* RE 20, the day the Order was issued, and as required by Federal Rule of Appellate Procedure 8(a)(1)(C) on the following day, October 24, 2024, moved the District Court pursuant to Federal Rule of Civil Procedure 62 to stay its Order and grant them an injunction pending this appeal. *See* RE 21. The District Court has not yet acted on that motion. Appellants certify that they have conferred with counsel for the Secretary, and that the Secretary does not consent to the relief or expedited briefing requested.

## Standard for Injunction Pending Appeal

This Court has the power to grant an injunction pending appeal to prevent irreparable harm to the party requesting such relief during the pendency of the appeal. *Eastern Greyhound Lines v. Fusco,* 310 F.2d 632, 634 (6th Cir. 1962). In granting such an injunction, the Court is to engage in the same analysis that it does in reviewing the grant or denial of a motion for a preliminary injunction. *See Overstreet v. Lexington-Fayette Urban County Govt.*, 305 F.3d 566, 572 (6th Cir.

2002). These factors are: (1) the likelihood the party seeking an injunction will prevail on the merits of the appeal; (2) the prospect of irreparable harm absent the injunction; (3) the prospect of harm to others if the court grants the injunction; and (4) the public interest in granting the injunction. *Hilton v. Braunskill,* 481 U.S. 770, 777 (1987); *Coal. to Defend Affirmative Action v. Granholm,* 473 F.3d 237, 244 (6th Cir. 2006).

## Factual and Procedural Background

This is an original action brought under 42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908), and the First Amendment against the Secretary in his official capacity. Appellants seek declaratory and injunctive relief preventing the Secretary from refusing to count lawfully cast votes for the Stein-Rios ticket and ordering the Secretary to cease informing voters that votes cast for the Stein-Rios ticket will not count. *See* Verified Complaint, RE 1 (hereinafter "Com.").

All parties concede that Stein and Rios timely complied with all requirements to appear on the ballot in Ohio's rapidly approaching general election. The Secretary confirmed this fact in a press release issued on August 23, 2024.[1] Indeed, Ohio has already printed ballots with Stein's and Rios's names included among the candidates

---

[1] *See* Ohio Secretary of State Media Center, *Secretary LaRose Confirms Statewide Candidates Qualified to Appear on November 5, 2024 General Election Ballot*, August 23, 2024, *available at* https://www.ohiosos.gov/media-center/press-releases/2024/2024-08-23/ (accessed October 8, 2024).

for President and Vice-President. Yet on September 19, 2024 the Secretary notified Stein and Rios that votes cast for them would be void and not counted. *See* RE 16-1, Ex. I. Why? Unbeknownst to Rios – and without her authorization – a Green Party of Ohio member (Philena Farley) with no connection to the Stein/Rios campaign – Stein and Rios are running as independents in Ohio -- submitted a letter to the Secretary mistakenly advising that Rios desired to withdraw her name as a candidate.[2]

Following receipt of the September 19, 2024 announcement, Jason Call, the campaign manager for Stein, immediately contacted the Secretary and reiterated that neither Rios nor Stein had withdrawn. *See* RE 17-4. The Secretary then had one of his officers, Hun Yi, interview Call, Rios and Farley over the course of the following week. This investigation culminated in Rios's twice sending notarized letters to Yi on September 27, 2024 and October 2, 2024 stating that she did not sign the August 28 letter, did not withdraw, and did not authorize Farley to withdraw her name. *See* Yi Dec., Ex.B, RE 16-2; Burnett Dec., Ex.I, RE 16-2; Ver. Com., Ex.A, RE 1. The

---

[2] The text of the August 28 letter states: "I, Anita Rios, hereby withdraw my name as a placeholder candidate for Vice President of the United States on the nominating petition in Ohio for the 2024 presidential election. I was never officially nominated by the Green Party of the United States, and Jill Stein has since chosen Dr. Butch ware as her running mate. I request that my name be removed from any relevant documents and be replaced with Dr. Butch Ware, the officially nominated Vice Presidential candidate. Thank you for your prompt attention to this matter." RE 16-1.

Secretary had been informed by Farley when the letter was filed that it was not genuine, and Rios reiterated this in her notarized letters.

After receiving these notarized letters the Secretary emailed Call on October 1, 2024 that "the position of our office has not changed." Ver. Com. para. 25, RE 1. Plaintiffs notified the Secretary through counsel on October 7, 2024 that they would be filing suit if the Secretary did not correct its mistake and did so on October 9, 2024. The Secretary's belated investigation induced Appellants to believe he would correct his error and count Stein's votes. Rather than disregarding the mistaken and invalid withdrawal letter, the Secretary announced that it may refer the matter to a prosecutor – *while still insisting that the mistaken withdrawal request must be honored*.

By waiting more than three weeks after receiving the mistaken request – until September 19, 2024, the day before general election voting commenced – to notify Appellants that votes cast for Stein and Rios would be void and not counted, the Secretary invites confusion and the inevitable disenfranchisement not only of Appellants, who will be denied the right to vote for their preferred candidates, but also of countless other Ohio voters who will cast their votes for the ballot-qualified Stein-Rios ticket, unaware that the Secretary will treat those votes as void.

The Secretary cannot assert any legitimate or compelling state interest that could justify his actions and the harms he inflicts. On the contrary, the injuries the

Secretary will inflict are wholly unnecessary, and eminently avoidable, because the Secretary could simply treat Stein and Rios the same as all other ballot-qualified candidates by crediting and counting the votes cast for them. The Secretary's action not only needlessly and belatedly threatens the outcome of a presidential election, *see Trump v. Anderson*, 601 U.S. 100 (2024), it risks infecting the outcomes of important down-ticket contests in Ohio, including its tight U.S. senatorial race and whether to adopt Issue 1. Having been told that their votes won't count, after all, Stein's thousands of supporters might choose not to vote at all.

Appellants filed their Complaint on October 9, 2024, just one week after the Secretary announced that he would not change his position. On that same day they filed their Motion for Temporary Restraining Order and Preliminary Injunction. RE 2. The judge assigned the case recused herself on October 11, 2024. Judge Watson then accepted the case and scheduled an initial conference for October 16, 2024, where he then scheduled an evidentiary hearing for October 22, 2024. RE 18. The next day, October 23, 2024, the Court entered its *Pullman* Order abstaining from ruling on Appellants' request for preliminary relief. RE 19.

## Facts

A singular falsehood underpins the Secretary's entire position in this case. According to the Secretary, Anita Rios "withdrew her candidacy and asked for a substitution." Memorandum in Opposition to Appellants' Motion for Temporary

Restraining Order and Preliminary Injunction, RE 16, ("Sec. Resp."), at 1. That is demonstrably false, and the Secretary knows or should know it is false based on the uncontroverted testimony he elicited in sworn depositions taken on October 18, 2024. *See* Deposition of Anita Rios ("Dep. Rios"), RE 17-1; Deposition of Philena Farley ("Dep. Farley"), RE 17-2.

Philena Farley, the Ohio Green Party (OHGP) member who submitted the August 28, 2024 letter requesting Rios's withdrawal, advised the Secretary's staff when she submitted the letter that Rios had not signed it, and that Farley herself had instead affixed a digital copy of Rios's signature. RE 17-2, Dep. Farley, 41:5-41:19; 42:5-42:12; 45:14-45:22. Farley prepared the letter herself with no help from Rios, the Stein campaign, or anyone else. RE 17-2, Dep. Farley, 45:14-45:22; 47:18-48:1; RE 17-1, Dep. Rios, 26:21-28:9; 29:14-29:25; 31:10-31:17; 48:20-50:8. Farley had never before acted as an agent of Rios or the Stein campaign, and she was not authorized to act as their agent when she filed the letter. RE 17-1, Dep. Rios, 30:1-30:6; RE 17-2, Dep. Farley, 14:6-15:25; RE 17-3, Rios Letter; RE 17-4, Declaration of J. Call ("Call Decl.") ¶¶ 4-5. Farley submitted the letter not because anyone authorized or directed her to do so, but because she found the situation "confusing" and was unsure what to do – i.e., based on an innocent misunderstanding. RE 17-2, Dep. Farley, 43:20-45:4.

Rios likewise advised the Secretary in a sworn statement submitted on September 27, 2024 and again on October 2, 2024 that she did not authorize or even know about the letter Farley submitted before she submitted it. RE 17-3, Rios Letter. Rios swore to this again at her deposition. RE 17-1, Rios Dep., 30:1-30:11; 31:10-31:17. Rios's deposition testimony also comports with Farley's as to all other material facts.

The uncontroverted record evidence thus establishes that Rios did not know about, much less authorize, any request to withdraw her candidacy. She did not know about or authorize any request for her substitution. The Secretary's assertion to the contrary is therefore simply stunning. It is flatly contradicted by the uncontested evidence the Secretary himself propounded.

## **Argument**

The District Court made a fundamental mistake. It chose to abstain even though the delay caused by that decision would exacerbate the First Amendment violation at the center of this case.

## I. Preliminary Relief Is Virtually Mandatory When the Court Abstains in First Amendment Cases.

Both the Supreme Court and the Sixth Circuit have expressed a "strong aversion to the invocation of *Pullman* abstention when a state statute is being challenged on First Amendment grounds and when that statute is not obviously

susceptible to a limiting construction." *Coleman*, 848 F.3d at 753 (citation omitted). "In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Id.* at 748 (quoting *Zwickler v. Koota*, 389 U.S. 241, 252 (1967)). Consequently, where "it is far from guaranteed that the resolution of [a state court suit] will correspondingly resolve any unclear issues of state law that might eliminate the federal constitutional questions," *Coleman*, 848 F.3d at 752, *Pullman* abstention is not proper. *Ohioans Against Corporate Bailouts, LLC v. LaRose*, 414 F.Supp.3d 1058, 1064 n.3 (S.D. Ohio 2019).

To determine whether it is likely that resolution of a state-law issue will eliminate the federal constitutional questions, a federal court must explore state law to determine whether it is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question...." *Coleman*, 848 F.3d at 752 (citations omitted). "[D]istrict courts should engage in a thorough analysis of the state-law issue before abstaining under *Pullman*." *Id.* at 753. Where that exploration reveals that the state statute "is not ambiguous, even if the statute has never been interpreted by a state court," *id.* at 752, Pullman abstention is not proper.

Here, the District Court pointed to O.R.C. § 3513.30(D) for the needed ambiguity to support abstention. That statute, however, cannot plausibly support *Pullman* abstention. Section 3513.30(D) states in relevant part that a candidate's "withdrawal may be effected by the filing of a written statement by such candidate announcing the candidate's withdrawal and requesting that the candidate's name not be printed on the ballots." Not only must the withdrawal letter announce the candidate's withdrawal, it must specifically request that "the candidate's name not be printed on the ballots." The facts overwhelming establish here that Rios did not sign and did not authorize delivery of the letter. Rios, the candidate, did not announce her withdrawal.

Just as importantly, Section 3513.30(D)'s terms plainly require that to have effect a withdrawal letter must in writing expressly provide that the candidate does not want her name printed on the ballot. The unauthorized withdrawal request here fails to do so. Farley, in her August 28, 2024 letter, wrote:

> I, Anita Rios, hereby withdraw my name as a placeholder candidate for Vice President of the United States on the nominating petition in Ohio for the 2024 presidential election. I was never officially nominated by the Green Party of the United States, and Jill Stein has since chosen Dr. Butch Ware as her running mate.
>
> I request that my name be removed from any relevant documents and replaced with Dr. Butch Ware, the officially nominated Vice Presidential candidate.

Burnett Dec., Ex. F, RE 16-1. Farley's letter did not comply with a plain and unambiguous state law. It could not have effected a withdrawal.

The terms of section 3513.30(D) admit no ambiguity, as the Ohio Supreme Court's recent opinion in *State ex rel. Renner v. Athens County Board of Elections*, 2024-Ohio-356 (Feb. 1, 2024), makes clear, and this letter plainly does not satisfy the statute's terms. Because O.R.C. 3513.30(D)'s terms are not ambiguous and because Farley's letter did not comply with them, *Pullman* abstention is not proper under this statute.

Even when state laws are truly ambiguous, and their resolutions following a federal court's thorough analysis are likely to "eliminate the federal constitutional question," a federal court abstaining under *Pullman* in First Amendment cases "ought ordinarily to grant [preliminary injunctive relief] when it abstains." *Id*. at 754. Abstaining without preliminary relief, after all, only exacerbates the First Amendment violation. "[T]he impermissible chilling of the very constitutional right [Appellants] seeks to protect," *Coleman*, 848 F.3d at 748, is allowed to continue. This is doubly true in the context of voting, where denying preliminary relief while abstaining necessarily leads to irreversible injuries. Those votes that are lost because of a rogue election official's action can never be re-cast.

## II.   The Court Should Grant Preliminary Relief Because All Relevant Factors Weigh Decisively in Appellants' Favor.

There is a strong likelihood that Appellants will prevail on the merits in this action because the Secretary is severely burdening Appellants' First and Fourteenth Amendment rights by treating votes cast for the Stein-Rios ticket as void and refusing to count them, and no compelling or legitimate state interest can justify such unequal treatment. On the contrary, the Secretary has actual notice that Rios did not know about or authorize the letter of withdrawal mistakenly submitted on her behalf, and so he can – and should – simply disregard it. The First Amendment demands nothing less.

Instead, the Secretary insists upon disenfranchising not only Appellants, but also countless Ohio voters who all but certainly will cast votes for the Stein-Rios ticket, unaware of the Secretary's last-minute announcement that such votes will be treated as void and not counted. In the absence of judicial intervention, therefore, Appellants and a substantial but indeterminate number of Ohio voters will suffer irreparable harm to their First Amendment speech, associational and voting rights. By contrast, neither the Secretary nor anyone else will be harmed by a Court order that merely requires the Secretary to credit as valid and count votes cast for candidates who duly qualified to appear on Ohio's general election ballot. Finally, the requested relief serves the public interest because it vindicates Ohio voters' rights and ensures the orderly administration of the impending general election, which will otherwise be disrupted by the Secretary's needless refusal to credit and count votes

cast for ballot-qualified candidates. All factors thus weigh decisively in favor of granting Appellants the requested relief.

## III. Appellants Have a Strong Likelihood of Success on the Merits.

There is a strong likelihood that Appellants will prevail on the merits on two independently sufficient grounds. First, the Secretary's unequal treatment of votes cast for the Stein-Rios ticket cannot withstand *Anderson-Burdick* scrutiny and is therefore unconstitutional. Second, the First Amendment requires the Secretary to make a reasonable determination of the facts relied upon to deny Appellants' speech, associational and voting rights, and the Secretary plainly failed to do so.

### 1. The Secretary's Treatment of Votes Cast for the Stein-Rios Ticket as Void Cannot Survive *Anderson-Burdick* Scrutiny.

Appellants' claims that the Secretary's unequal treatment of votes cast for the Stein-Rios ticket violates their First and Fourteenth Amendment rights are analyzed under the familiar *Anderson-Burdick* framework. *See Graveline v. Benson*, 992 F.3d 524, 534 (6th Cir. 2021) (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992)). Under that framework, a reviewing court must:

> weigh the "character and magnitude of the asserted injury" to plaintiffs' constitutional rights against the "precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson,* 460 U.S. at 789. The appropriate balance is determined by the magnitude of the burden. If the burden is severe, the regulation will be upheld only if it is "narrowly drawn to

advance a state interest of compelling importance." *Burdick,* 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). If the regulations are minimally burdensome, the state's regulatory interests will likely justify "reasonable, nondiscriminatory restrictions." *Anderson,* 460 U.S. at 788. Many regulations fall somewhere between these two extremes. When a regulation imposes an intermediate burden, "courts engage in a flexible analysis, weighing the burden on the plaintiffs against the state's asserted interest and chosen means of pursuing it." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 546 (6th Cir. 2014).

*Graveline*, 992 F.3d at 534-35.

Here, the Secretary's enforcement of O.R.C. §§ 3513.257, 3513.30(E) and 3513.31(F) is severely burdensome – it will disenfranchise Appellants, their supporters, and countless more Ohio voters – and thus compels strict scrutiny, which it cannot withstand. But even if the Court finds the burden on Appellants' rights to be intermediate or even minimal, the provisions are still unconstitutional as applied because they serve no legitimate state interest whatsoever.

### a. The Burdens Imposed on Appellants' First and Fourteenth Amendment Rights Are Severe.

The Ohio laws challenged here "place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). "Both of these rights … rank among our most precious freedoms." *Id.* And here, as in *Williams*, no extended discussion is needed to establish that the

Secretary's enforcement of the challenged laws impose severe and unequal burdens on these rights. "The right to [associate] for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes." *Id.* at 31. That is no less true here, where the Secretary has not blocked Appellants from the ballot but has just as certainly denied them an opportunity to win votes – *even though there is no dispute that Stein and Rios are duly qualified candidates*.

Further, the Secretary has notified all county boards of election that votes cast for the Stein-Rios ticket will be void and not counted, and the county boards will notify voters prior to and on election day at polling locations. As a result, the Secretary has functionally terminated the Stein-Rios candidacy. Voters are exceedingly unlikely to cast their votes for Stein and Rios if they know those votes will be void and not counted. That is a severe burden on Appellants' speech and associational rights.

The Secretary's decision also severely burdens Appellants' voting rights. Appellants' preferred candidates – Stein and Rios – have duly qualified to appear on Ohio's November 5, 2024 general election ballot, and they do in fact appear on that ballot, but if Appellants vote for them, their votes will be void and not counted. Appellants will be forced either to forego the opportunity to vote for the presidential ticket of their choice, or to be disenfranchised. Here, no less than *Williams*,

Appellants' right to vote is "heavily burdened" because they cannot vote for their preferred candidates – even though, once again, there is no dispute that those candidates qualified for the ballot. *See Williams*, 393 U.S. at 31.

The Secretary's unequal treatment of votes cast for the Stein-Rios ticket will also violate Appellants' right to equal protection. Stein and Rios duly qualified to appear on Ohio's November 5, 2024 general election ballot. They do in fact appear on that ballot. Yet the Secretary insists that votes cast for them must be treated as void and not counted. Further, the Secretary has severely disadvantaged the Stein-Rios ticket, relative to other qualified candidacies, by announcing that votes cast for the Stein-Rios ticket will be void and not counted. Such unequal treatment of votes cannot be reconciled with long-settled Supreme Court precedent.

The Supreme Court has "consistently recognized that all qualified voters have a constitutionally protected right to cast their ballots and have them counted…." *Gray v. Sanders*, 372 U.S. 368, 380 (1963) (citations and quotation marks omitted). Although *Gray* involved vote dilution in Congressional elections, the principle applies with equal force here, in the context of a presidential election where the Secretary intends not to count valid votes cast for ballot-qualified candidates. As the Court explained:

> Every voter's vote is entitled to be counted once. It must be correctly counted and reported. As stated in *United States v. Mosley,* 238 U.S. 383, 386, 'the

right to have one's vote counted' has the same dignity as 'the right to put a ballot in a box.'

*Gray*, 372 U.S. at 380.

Furthermore, "[i]n decision after decision, this Court has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (citations omitted). Although "[t]his equal right to vote is not absolute … as a general matter, before that right to vote can be restricted, the purpose of the restriction and the assertedly overriding interests served by it must meet close constitutional scrutiny." *Id.* (citations, quotation marks and brackets omitted).

> **b.** **The Secretary's Unequal Treatment of Votes Case for the Stein-Rios Ticket Serves No Legitimate, Much Less Compelling State Interest.**

Even if the Court found the Secretary's enforcement of O.R.C. §§ 3513.257, 3513.30(E) and 3513.31(F) imposed a less than severe burden – either intermediate or even minimal – the statutes could not survive *Anderson-Burdick* scrutiny as applied here because they serve no state interest whatsoever. The Secretary acknowledges that Stein and Rios qualified to appear on Ohio's November 5, 2024 general election ballot, and that they are in fact included on those ballots. Further, the Secretary has actual notice that Rios did not withdraw her candidacy. *Gray*, *Dunn* and the long line of precedent on which they rely squarely foreclose any

possibility that Ohio has a legitimate interest in failing to count votes cast for such candidates.

 2.  **The Secretary Violated the Secretary's Duty to Make a Reasonable Determination of the Facts Relied Upon to Deny Appellants' First Amendment Rights.**

In cases where a governmental decisionmaker is vested with authority to take action that infringes upon First Amendment rights, the Supreme Court has recognized that "the decisionmaker [must] reach its conclusion … in good faith, rather than as a pretext; but it does not follow that good faith is sufficient." *Waters v. Churchill*, 511 U.S. 661, 677 (1994) (plurality).  Instead, a governmental decisionmaker also must be able to establish that the facts relied upon to penalize or deny First Amendment rights are what the decisionmaker "*reasonably* found them to be."  *Id.* (emphasis original).  "[T]the possibility of inadvertently punishing someone for exercising her First Amendment rights makes such care necessary." *Id.* at 678.

*Waters* involved the question whether a governmental employee's speech could, consistent with the First Amendment, serve as the basis for disciplining or discharging the employee.  *See id.* at 664.  In this case, where the First Amendment rights at issue "rank among our most precious freedoms," *Williams*, 393 U.S. at 30, the standard applicable to the Secretary's factfinding must be at least as exacting. And in *Waters*, the Court observed that "it may be unreasonable for [a governmental

decisionmaker] to act based on extremely weak evidence when strong evidence is clearly available…." *Waters*, 511 U.S. at 677. That is precisely what the Secretary has done here.

The Secretary has actual notice that Rios did not know about or authorize any attempt to withdraw her candidacy. The Secretary has nonetheless relied on an unauthorized, mistaken and legally invalid attempt at withdrawal as the sole basis for effectuating Rios's actual withdrawal – notwithstanding the Secretary's possession of Rios's sworn affidavit stating that she does not and never has requested her withdrawal. The Secretary is relying on extremely weak evidence and disregarding the strongest possible evidence of Rios's intent – her sworn statement to that effect. The First Amendment forbids such arbitrary procedures. *See id.* at 678 (concluding that "procedures outside the range of what a reasonable [decisionmaker] would use may be condemned as unreasonable.").

### B. Appellants Will Suffer Irreparable Harm Absent the Requested Relief.

There can be little doubt that Appellants will suffer irreparable harm if the Court does not grant the requested relief. The Secretary has effectively terminated the Stein-Rios candidacy, notwithstanding the undisputed fact that these candidates duly qualified to appear on Ohio's November 5, 2024 general election ballot. Unless this Court intervenes, Stein and Rios cannot speak in Ohio as ballot-qualified

candidates, they cannot campaign for voters' support as ballot-qualified candidates, and most critically, they cannot win votes and have them counted – all of which is core First Amendment protected conduct. *See Williams*, 393 U.S. at 30-31.

So too, the voter-Appellants will be denied the right to vote for their preferred candidates – or if they do, they will be disenfranchised – even though those candidates are ballot-qualified. *See id.* Such infringement of Appellants' fundamental First Amendment rights unquestionably constitutes irreparable injury. *See Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) ("It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

## C.   Granting the Requested Relief Will Not Harm Anyone.

It is equally clear that granting the requested relief not only will not "cause substantial harm to others" – it will not harm anyone at all. *Northeast Ohio Coalition for the Homeless*, 467 F.3d at 1009. Stein and Rios are already on Ohio's general election ballots. They will not be removed. And the relief requested here – that the Secretary be prohibited from treating votes cast for the Stein-Rios ticket as void and not counting them – is precisely what the Secretary was planning to do when he publicly announced that Stein and Rios were ballot-qualified. Neither the Secretary

nor any other party can assert a harm that will arise if votes cast for duly qualified candidates are credited and counted on an equal basis with all other valid votes.

**D.    The Public Interest Will Be Served by Granting the Requested Relief.**

Finally, it is equally clear that the public interest will be served by granting the requested relief.  "[T]he public interest weighs in favor of allowing registered voters to vote freely." *Summit County Democratic Party v. Blackwell*, 388 F.3d 547, 555 (6th Cir. 2004); *see also Northeast Ohio Coalition for the Homeless*, 467 F.3d at 1012 ("There is a strong public interest in allowing every registered voter to vote.").  There is also "a strong public interest in smooth and effective administration of the voting laws that militates against changing the rules in the middle of the submission of absentee ballots." *Northeast Ohio Coalition for the Homeless*, 467 F.3d at 1012 (citation omitted).  Here, the Secretary notified Appellants that votes cast for the Stein-Rios ticket would be void and not counted on September 19, 2024 – more than three weeks after the Secretary received the mistaken withdrawal request and just one day before the Secretary publicly announced that the general election was "officially underway" with military and overseas voting already begun. The Secretary's inexplicable delay will undoubtedly "result in voter confusion" as those ballots still include the Stein-Rios ticket among the ballot-qualified choices in the presidential election. *Northeast Ohio Coalition for the Homeless*, 467 F.3d at

1012 (citation omitted). The Secretary's belated and gratuitous decision to treat votes cast for the Stein-Rios ticket as void and not to count them thus "needlessly creates disorder in electoral processes, without any concomitant benefit to the public." *Id.*

The District Court's reliance on *Purcell v. Gonzalez*, 549 U.S. 1 (2006), to support abstaining and refusing accompanying preliminary relief thus has it backwards. It is the Secretary who altered the status quo the day before voting began. His action has disrupted the election. If the District Court is correct, then a federal court can never correct an elections official's decision not to count votes that have otherwise been properly cast. Imagine, a state elections official could announce on the day before the November 5, 2024 presidential election that the state will not count votes for Trump, or Harris. Applying *Purcell* to prevent a federal court from stepping in would turn that case on its head.

## Conclusion

Appellants' request for an injunction pending appeal should be GRANTED.

Respectfully submitted,

*s/Mark R. Brown*
Mark R. Brown
*Counsel of Record*
Newton D. Baker/Baker & Hostetler Chair
CAPITAL UNIVERSITY*
303 East Broad Street
Columbus, Ohio 43215

614.236.6590
mbrown@law.capital.edu

Oliver Hall
Legal Counsel
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202.248.9294
oliverhall@competitivedemocracy.org
Counsel for Appellants

\* For purpose of identification only

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this motion complies with the type-volume requirements and contains 5153 words. *See* Fed. R. App. P. 27(d)(2)(A).

/s/ *Mark R. Brown*_____

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically which will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. I further certify that a copy of the foregoing has been served by e-mail upon Elliot Gaiser, Ohio Solicitor General, Thomas.Gaiser@OhioAGO.gov.

/s/ *Mark R. Brown*_____