UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**DR. JILL STEIN, et al.,**

        Plaintiffs-Appellants,

v.     **CASE NO. 24-3923**

**FRANK LAROSE**,
in his Official Capacity as Ohio
Secretary of State,

        Defendant-Appellee.

_____

**PLAINTIFFS-APPELLANTS' REPLY TO DEFENDANT-APPELLEE'S OPPOSITION TO MOTION FOR INJUNCTION PENDING APPEAL**

    Mark R. Brown
    *Counsel of Record*
    Newton D. Baker/Baker & Hostetler Chair
    CAPITAL UNIVERSITY*
    303 East Broad Street
    Columbus, Ohio 43215
    614.236.6590
    mbrown@law.capital.edu

    Oliver Hall
    Legal Counsel
    CENTER FOR COMPETITIVE DEMOCRACY
    P.O. Box 21090
    Washington, DC 20009
    202.248.9294
    oliverhall@competitivedemocracy.org

    *Counsel for Plaintiffs-Appellants*

    *For purpose of identification only

Should Ohio Secretary of State Frank LaRose be required to count votes for candidates who qualified to appear on Ohio's general election ballot? That is the only question this appeal raises and, despite the Secretary's efforts to muddy the waters, it isn't a close one. Of course the Secretary should. The Constitution demands it. Even the Secretary does not deny that his refusal to do so violates Appellants' First Amendment rights.

Instead of attempting to defend the indefensible – the unjustified and unnecessary disenfranchisement of thousands of Ohio voters – the Secretary insists that it is "too late" for the Court to grant relief, and that the District Court properly abstained because this case "turns on a state law issue" a state court should resolve. Opp. to Inj. Pend. Appeal, RE 12 ("Opp."), PageID#6. These assertions have no merit. They simply misrepresent the uncontroverted evidentiary record.

As a threshold matter, Appellants do not ask that the Court "chang[e] the rules" or that Ohio "change its ballot last-minute" as the Secretary incorrectly suggests. *Id*. Instead, Appellants ask that the Secretary *comply* with the rules by counting votes for qualified candidates who already appear on Ohio's ballot – and stop advising voters of his refusal to do so. It is not too late to grant such limited relief, nor will doing so cause the disruption or confusion the Secretary imagines. Voters will simply know that their votes will count if they are cast for the ballot-qualified Stein-Rios ticket.

1

Further, it is the Secretary, not Appellants, who delayed by waiting more than three weeks after receiving the unauthorized August 28 withdrawal request – until ballots were being mailed – to announce on September 19 that he would not count votes for the Stein-Rios ticket. Pl. Mot. for T.R.O. and P.I., Ex. A, RE 2-2. What's worse, the Secretary had already reached that decision because the mailed ballots contained an advisory to that effect – the Secretary just didn't disclose it to Appellants until the ballots were in the mail. Opp., PageID#17; Decl. of J. Call ¶¶ 7-11.

Appellants did not "sit on [their] rights," as the Secretary asserts. Opp., PageID#6. When Farley mistakenly submitted her unauthorized withdrawal request, the Secretary's staff advised her "that it was too late to do it" and that it would simply be on "the record that I submitted this too late." Dep. Farley, RE 17-2, 34:20 – 34:25. Appellants had no reason to believe the Secretary would abruptly reverse this position more than three weeks later. When he did, Stein's campaign manager and Rios both advised the Secretary that Farley's submission was mistaken and unauthorized. Decl. of H. Yi, RE 16-2, PageID#159-60. At the Secretary's request, Rios submitted a sworn statement to that effect – twice – in the belief that would resolve the matter, *id.*, PageID #160; Rios Statement, RE 17-3, but the Secretary apparently doesn't credit Rios's statement because it was not properly notarized. Opp., PageID#11. Yet the Secretary is giving legal effect to an invalid withdrawal

2

request he knows Rios did not sign, authorize or even know about. Pl. Reply, RE 17, PageID#177-78. That is what necessitated this litigation.

In any event, none of this raises any issue under state law. No Ohio statute requires construction to resolve Appellants' claims. At most, there are disputed *factual* issues as to whether Rios withdrew or not – but even those issues are not in dispute because the uncontroverted evidence establishes she did not. *See id.* Moreover, factual disputes cannot support abstention under *Pullman*. The District Court therefore should have granted relief.

## ARGUMENT

### I. The *Purcell* Principle Does Not Bar Relief.

The Secretary asserts that the *Purcell* principle prevents relief. Opp., PageID#13-18. That is incorrect. As the Fourth Circuit recently reiterated in refusing to stay injunctive relief directed at a state executive order, *Purcell* "protects the ability of '[l]awmakers to 'make a host of difficult decisions about how best to structure and conduct [an] election,' without interference to their 'carefully considered and democratically enacted state election rules' right before an election." *Virginia Coalition for Immigration v. Beals*, No. 24-2071, at 5, 2024 WL 4601052, *2 (4th Cir., Oct. 27, 2024) (quoting *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (mem.) (Kavanaugh, J., concurring in denial of application to vacate stay)), *stay granted*, No. 24A407 (U.S., Oct. 30, 2024). "But

3

appellees do not challenge a state election law. Instead, they challenge the implementation of an executive order that was itself issued 44 days before the start of early voting and only 90 days before the end of the election." *Id.* at *2.

The same is true here. Appellants challenge the Secretary's belated executive order – issued on the very eve of early voting – that severely, unnecessarily and unjustifiably restricts voting rights. Further, the Secretary did so despite *all evidence* establishing that Rios did not know about or authorize a withdrawal request on her behalf. Suppose the Secretary had taken the same action with respect to the Republican or Democratic nominee – no court could properly abstain under such facts. Nor should the District Court have abstained here. *Purcell* does not apply.

**II. The District Court Erred By Abstaining Under *Pullman*.**

The Secretary attempts to defend the District Court's abstention under *Pullman* by mischaracterizing factual issues (which are not genuinely in dispute) as questions of state law. Opp., PageID#19. Whether Farley's mistaken withdrawal letter was authorized is a question of fact that is conclusively resolved by the uncontested record evidence establishing that it was not. Pl. Reply, RE 17, PageID#177-78. Contrary to the Secretary's assertion, this question does not arise "under Ohio law." Opp., PageID#20. Indeed, the Secretary effectively concedes as much: despite his best efforts to identify a state law issue, the supposedly "difficult questions" he raises are all answered by the uncontested evidence that Farley did not

4

have actual or apparent authority to submit her mistaken withdrawal request. *Id.*, PageID#21; *but see* Pl. Reply, RE 17, PageID#177-78.

### A. Appellants' Claims Do Not Raise Questions of State Law.

*Pullman* abstention, in any constitutional case, requires the presence of ambiguous state laws. Not ambiguous facts. Where state law is unambiguous, *Pullman* abstention is improper whether the underlying facts are clear or not. "An outcome is not 'doubtful' or 'uncertain' just because it turns on the facts of the particular case." *Pearl Investment Co. v. City and County of San Francisco*, 774 F.2d 1460, 1465 (9th Cir. 1985). Rather, "[u]ncertainty for purposes of *Pullman* abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law." *Id*.

The Secretary asserts that "Plaintiffs omit from their briefing many facts that would tend to show either that Ms. Rios did in fact authorize Ms. Farley to submit the letter, or that Defendant acted reasonably in giving effect to the letter as a valid withdrawal." Opp., PageID#20. Unresolved factual issues like these, however, do not form a proper basis for invoking *Pullman*. If they did, *Pullman* would become the rule rather than the exception, since unresolved factual issues exist in just about every federal constitutional case. And these unresolved factual issues commonly are resolved under the background of state law.

5

This is especially true with "First Amendment facts," which federal courts have a special obligation to address independently and *de novo*. *See*, *e.g.*, *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 508 n.27 (1984) ("First Amendment questions of 'constitutional fact' compel this Court's de novo review"); *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17 (1990) (reviewing court must "make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression"); *Guiles v. Marineau*, 461 F.3d 320, 324 (2d Cir. 2006) ("in First Amendment cases [courts] make an independent and searching inquiry of the entire record, since [courts] are obliged to conduct a 'fresh examination of crucial facts ... so as to assure ourselves that [the lower court's] judgment does not constitute a forbidden intrusion on the field of free expression'"); *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013). Whether Rios authorized her withdrawal is a question of fact – not Ohio law – that implicates Appellants' First Amendment rights. The District Court was therefore obliged to address that fact. *See id*.

Contrary to the Secretary's assertion, Appellants do not invoke a "magic words" test, Opp., PageID#22, but rely on an authoritative Ohio Supreme Court decision establishing that O.R.C. § 3513.30(D) is not ambiguous. *See State ex rel. Renner v. Athens County Bd. of Elections*, 2024-Ohio-356, 2024 Ohio LEXIS 241 (Ohio Feb. 1, 2024). *Renner* makes clear that a naked withdrawal announcement

6

without an accompanying request to not have the candidate's name printed on the ballot – using that language – is not sufficient to constitute a withdrawal. Whether Farley's August 28 letter effectively withdrew Rios's name from the ballots thus presents a pure factual question under a clear state law, one that is not amenable to *Pullman*.

Moreover, because the Secretary knew or should have known the August 28 letter was not valid – Rios did not sign it – he was required to conduct a reasonable investigation and reach a reasonable conclusion by the First Amendment before announcing he would not count votes. *See Waters v. Churchill*, 511 U.S. 611 (1994). Neither *Pullman* nor the Eleventh Amendment justify not addressing Plaintiffs' arguments under these alleged facts. If they did, rogue elections officials could always subvert federal constitutional standards and avoid federal courts by simply arguing that they thought candidates had withdrawn or that voters had not voted.

### B. No State Law Issue Resolves the Secretary's Violation of Appellants' First Amendment Rights.

The Secretary again mischaracterizes a question of fact – whether Rios withdrew her candidacy – as a question of Ohio law in an attempt to show that *Pullman* abstention is proper. Opp., PageID#23. As explained above, the question is not whether "the Secretary *did* apply Ohio law correctly," as the Secretary asserts, *id.*, but whether Rios *in fact* withdrew her candidacy. She did not. All evidence in the record conclusively establishes that she did not, Pl. Reply, PageID#177-78, and

7

the Secretary cannot point to any evidence to the contrary. State courts have no special expertise that would help resolve that question of fact, because it does not require statutory construction. The District Court, by contrast, had an obligation to resolve that First Amendment fact. *See supra* Part I.A. Abstention was therefore improper.

### C. Abstention is Not Proper to Avoid As-Applied First Amendment Claims.

The Secretary asserts that preliminary relief is only warranted when a district court abstains in a case asserting a facial, not as-applied, First Amendment claim. Opp., PageID#24. That is incorrect. The Supreme Court has clearly stated that "abstention doctrine is inappropriate for cases ... where ... statutes are justifiably attacked *on their face* as abridging free expression, or *as applied* for the purpose of discouraging protected activities." *Dombrowski v. Pfister*, 380 U.S. 479, 489–90 (1965) (emphasis added). Whether facial or as-applied, "abstention doctrine is inappropriate" in First Amendment cases. *Id.*

The Ninth Circuit explained why the District Court here erred in *Porter v. Jones*, 319 F.3d 483, 493 (9th Cir. 2003), where it reversed a lower court's *Pullman* abstention order in an as-applied First Amendment case:

> In finding that it was appropriate to abstain from the as-applied challenge presented here, the district court distinguished the cases discussed above because they involved facial challenges, not as-applied challenges. The district court was correct in noting that there is a distinction between facial and as-applied challenges for purposes of *Pullman* analysis. However, that

> distinction relates to the second *Pullman* factor, not the first *Pullman* factor. The danger under the first *Pullman* prong that the decision to abstain might itself chill speech applies to both facial and as-applied challenges.

(Footnote omitted). The Ninth Circuit noted that "[t]he second *Pullman* factor, which involves an evaluation of whether a constitutional determination may be avoided, is frequently absent from a facial challenge, because a constitutional determination is generally required to assess a frontal attack upon a statute." *Id*. at 493 n.9 (citation omitted). "In contrast, in as-applied cases a statute may be construed narrowly so as not to apply to the facts in the case presented, thus averting a constitutional determination." *Id*. (citations omitted). Still, even when a state statute is ambiguous and can be construed narrowly to avoid or moot an as-applied First Amendment claim, *Pullman* abstention remains "inappropriate" because of the chilling effect on speech. *Pfister*, 380 U.S. at 489. Here that is certainly true. Voters are being told their votes will not be counted. That goes well beyond chilling speech. It freezes it. As-applied or facial, the result is the same. *Pullman* cannot be used.

The District Court compounded its *Pullman* error by concluding that this Court was wrong in holding that preliminary relief should ordinarily accompany any *Pullman* order that delays First Amendment challenges in *Jones v. Coleman*, 848 F.3d 744, 754 (6th Cir. 2017). The District Court offered that *Coleman*'s holding is "troubling, [since] the case Coleman cites for the bold proposition that injunctive relief must accompany abstention – *Daniel v. Waters*, 515 F. 2d 485,492 (6th Cir.

9

1975) – simply does not stand for that proposition." Order, RE 24, at PageID#415 (footnote omitted). The *Coleman* Court's "statement that such relief 'ought to be granted' is not binding," the District Court concluded. *Id*. It was pure dicta and wrong in the first place, according to the District Court.

District Courts have no authority to declare Circuit precedent wrong and "not binding." Even if the *Coleman* Court's rule might be considered non-binding dicta and incorrect, that is for this Court to decide and not the District Court. All by itself this blatant announcement by the District Court that it refuses to follow Circuit precedent justifies immediate relief in this case.

*Dombrowski* and *Coleman* teach that with First Amendment challenges, both facial and as-applied, "when the plaintiff has requested preliminary injunctive relief, a district court ought ordinarily to grant it when it abstains." *Coleman*, 848 F.3d at 754. In both situations, "to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Dombrowski*, 380 U.S. at 486-87. "[T]he abstention order [will] … effectively shut the federal courthouse door upon plaintiffs in their search for timely vindication of their federal constitutional claims." *Daniel*, 515 F.2d at 492.

## Conclusion

Appellants' request for an injunction pending appeal should be GRANTED.

        Respectfully submitted,

        *s/Mark R. Brown*
        Mark R. Brown
        *Counsel of Record*
        Newton D. Baker/Baker & Hostetler Chair
        CAPITAL UNIVERSITY*
        303 East Broad Street
        Columbus, Ohio 43215
        614.236.6590
        mbrown@law.capital.edu

        Oliver Hall
        Legal Counsel
        CENTER FOR COMPETITIVE DEMOCRACY
        P.O. Box 21090
        Washington, DC 20009
        202.248.9294
        oliverhall@competitivedemocracy.org

        Counsel for Appellants

        * For purpose of identification only

**CERTIFICATE OF COMPLIANCE**

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this document complies with the type-volume requirements and contains 2,425 words. *See* Fed. R. App. P. 27(d)(2)(C).

/s/ *Oliver B. Hall*
Oliver B. Hall

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by e-mail upon all parties for whom counsel has not yet entered an appearance and upon all counsel who have not entered their appearance via the electronic system.

/s/ *Oliver B. Hall*